UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CHARLES CARRASQUILLO,<br><br>            Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>            Defendant. | No.  CV 08-1918 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Charles Carrasquillo ("Carrasquillo") filed a Complaint on April 3, 2008. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on April 14 and August 4, 2008. The parties filed a Joint Stipulation ("JS") on February 2, 2009, that addresses the disputed issues in the case. The Commissioner filed the certified administrative record ("A.R."). The Court has taken the Joint Stipulation under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner at Step Five.

///

///

///

# I.

# **PROCEDURAL BACKGROUND**

On January 17, 2006, Carrasquillo filed an application for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of November 30, 1998. A.R. 62-66. The Commissioner denied the applications. A.R. 39-40. The Administrative Law Judge ("ALJ") conducted a hearing on October 23, 2007. A.R. 19-38. On November 14, 2007, the ALJ issued a decision denying benefits. A.R. 7-15. The ALJ concluded that Carrasquillo "has not been under a disability, as defined in the Social Security Act, from November 30, 1998 through the date of this decision [ ]." A.R. 15 (internal citation omitted).

Carrasquillo filed a request for review of the ALJ's decision. A.R. 6. The Appeals Council denied the request for review. A.R. 2-4. This lawsuit followed.

# II.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

///

# III.

# EVALUATION OF DISABILITY

## A. Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

## B. The ALJ's Findings

Following the five step sequential evaluation process for determining disability, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006), the ALJ found that Carrasquillo "has the following severe impairments: hypertension and diabetes." A.R. 12. The ALJ also found that Carrasquillo met the insured status requirements through September 30, 2000 and, for Title II purposes, had to prove his disability existed on or before that date. *Id.* The ALJ found that Carrasquillo had the residual functional capacity to perform "a limited range of medium work," which is "limited only by slight loss of sensation in his hands." A.R. 14. As discussed more fully below, the ALJ's findings at Step Five are not clear.

## C. Diagnosis Of Neuropathy and Treating Physicians' Opinions

In his first two claims, Carrasquillo contends that the ALJ misstated the evidence and improperly considered the treating physicians opinions as to his diagnosis of neuropathy. JS at 3-5, 7-8. Because the first two claims appear identical, the Court addresses both claims together.

Respondent concedes that Carrasquillo's treatment records have an assessment of neuropathy since February 2006. JS at 5; *see* A.R. 141 (1/06), 211 (2/06), 210 (3/06), 207 (5/06), 201 (11/06), 199 (1/07), 198 (2/07), 194 (4/07), 214 (7/07), 213

(8/07), 212 (9/07).  The ALJ's statement that "[o]n June 7, 2007 neuropathy was added to claimant's diagnoses" is incorrect.[1]  A.R. 13.

Respondent concedes that the ALJ erred in stating that a treatment note for September 13, 2007 did not include a diagnosis of neuropathy.  JS at 5; *Compare* A.R. 13 *with* A.R. 212.

Respondent argues that the error is harmless.  The ALJ's RFC assessment did include a limitation for "slight loss of sensation in his hands" based on the examining physician's opinion.  A.R. 14.  The examining physician's report dated March 24, 2006 noted that Carrasquillo had been diagnosed with diabetes two and a half years earlier in 2004.  A.R. 177.  Carrasquillo complained of "fatigue, tingling and numbness of the hands and feet."  *Id.*  In the neurological exam, the examining physician observed: "Sensation is decreased to soft touch in the hands and feet.  Otherwise, grossly intact to soft touch throughout the upper and lower extremities, bilaterally."  A.R.180.  The examining physician's opinion was that Carrasquillo "presents sensory deficit in the hands and feet which suggests some degree of diabetic neuropathy."  *Id.*  Taking this diagnosis into account, the examining physician opined that Carrasquillo was capable of medium work as noted in the ALJ's decision.  A.R. 13, 181.

Because this case is being remanded for other reasons, the ALJ is free to reconsider the September 13, 2007 treating records on remand.

### D.    Development of the Record

It is the claimant's duty to prove he is disabled.  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  *See* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

---

[1] The treatment record on June 7, 2007 does not assess neuropathy.  A.R. 215.  The ALJ may have intended to refer to the preceding page dated July 12, 2007, which does assess neuropathy.  A.R. 214.

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotation marks omitted). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.

Carrasquillo argues that the ALJ had a duty to develop the record because the ALJ stated that the diagnosis of neuropathy on June 7, 2007 did not "specify what part of claimant's extremities was affected." JS at 9 (citing A.R. 13).

Carrasquillo's argument ignores the record as a whole. The treating records contain Carrasquillo's complaints that he had tingling in his fingers and feet. A.R. 141 (feet), 211 (feet, fingers). Although there is no indication that any treating physician performed tests on Carrasquillo as to his neuropathy, the examining physician did conduct such tests. A.R. 177-81. The examining physician's report is discussed above and will not be repeated here. The ALJ cited and relied on this report. A.R. 13-14.

The ALJ did not find that the record was ambiguous or inadequate. Nor did any physician render an opinion that the record was ambiguous or inadequate. *Cf. Tonapetyan*, 242 F.3d at 1150 (duty to develop record existed when ALJ relied on physician who expressed that more medical evidence was needed to state a diagnostic opinion). Based on the record, the ALJ had no duty to develop the record further. *See Mayes*, 276 F.3d at 459-60.

E.   **Carrasquillo's Credibility**

Carrasquillo next contends that the ALJ did not properly consider his testimony of pain in his hands, feet, right knee and back, which he described as "excruciating, constant throbbing everywhere." JS at 12 (quoting A.R. 105).

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citations omitted). Here, the ALJ found that Carrasquillo's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." A.R.14.

"Second, if the claimant meets this first test, and there is no evidence of malingering,[2] 'the ALJ can reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2001); *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Carrasquillo's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." A.R. 14. The ALJ relied upon two factors: (1) absence of objective medical evidence supporting the severity of Carrasquillo's pain; and (2) laboratory reports that were often out of range despite Carrasquillo's "extensive pharmacy," "indicating possible non-compliance with physician directions." A.R. 13.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Carrasquillo argues that the ALJ did not address pain in his back and knee. However, the ALJ cited a radiological study of Carrasquillo's back and right knee that revealed only "mild degenerative disease of the

---

[2]   The ALJ did not find that Carrasquillo was a malingerer.

lumbar spine and a normal study of the right knee." A.R. 13, 192-93.  The ALJ also cited the examining physician's report, which was largely "unremarkable except for decreased sensation to soft touch in the hands and feet." A.R. 13 (citing A.R.177-81). As the ALJ noted (A.R. 13), Carrasquillo had "normal range of motion of the back without any signs of radiculopathy" and "normal range of motion of the right knee." A.R. 180.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (ALJ may discount claimant's testimony based on objective medical evidence), *cert. denied*, 128 S. Ct. 1068 (2008); *Burch*, 400 F.3d at 681 (claimant's pain allegations may be discounted based on MRI and X-rays showing mild degenerative disc disease and mild dextroscoliosis).

Noncompliance with treatment may form the basis for an adverse credibility finding. *Id.* (lack of consistent treatment may be considered in assessing credibility as to severity of pain); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (noncompliance with prescribed course of treatment is a relevant factor in assessing credibility).  Carrasquillo does not dispute this finding in the Joint Stipulation.  *See Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001) (where evidence of compliance conflicted, ALJ could conclude claimant was noncompliant with taking medications).

Accordingly, the ALJ's credibility finding is supported by substantial evidence.

### F. Side Effects of Medication

Carrasquillo points to a questionnaire in 2006 in which he identified the following side effects: "drowsiness, dry mouth, sedation, sometimes fever." A.R. 106. Carrasquillo complains that the ALJ did not specifically address these side effects in his decision.

Carrasquillo does not cite to any evidence that these side effects interfere with his ability to work.  At the hearing, Carrasquillo did not identify side effects as a reason he could not work.  The treatment records do not contain any complaint by Carrasquillo as to side effects from medications.  "There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side

7

effects severe enough to interfere with [his] ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (side effects such as "dozing off" and "dry mouth" not severe enough); *see also Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) ("[Plaintiff] produced no clinical evidence showing that narcotics use impaired his ability to work"). The ALJ did not err.

### G. Vocational Expert Testimony.

Finally, Carrasquillo claims that the ALJ should have obtained the testimony of a Vocational Expert ("VE") regarding the effect of his nonexertional limitations, which he asserts include neuropathy and side effects from medication. JS at 18-19.

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry*, 468 F.3d at 1114. If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is "disabled" and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.* "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115. The grids are inapplicable when "a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations."[3] *Hoopai v.*

---

[3] Nonexertional limitations include "postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching." *Lounsburry*, 468 F.3d at 1115; *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (treating significant difficulty with manual manipulation and dexterity as a nonexertional limitation).

*Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and internal quotation marks omitted).

This matter must be remanded at Step Five because the ALJ's analysis is not clear. On the one hand, the ALJ found Carrasquillo "not disabled" according to the grids. A.R. 15. On the other hand, the ALJ found that "there are no jobs that exist in significant numbers in the national economy that the claimant can perform." A.R. 14. The ALJ concludes that Carrasquillo "has not been under a disability." A.R. 15.

The ALJ's decision does not mention or discuss any nonexertional limitation. A.R. 15. The ALJ did find that Carrasquillo's ability to perform medium work was "limited only by slight loss of sensation in his hands" and concluded that he could "perform a limited range of medium work." A.R. 14. It is not clear whether the ALJ found a nonexertional limitation that was sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations, or whether the "limited range of medium work" was due to exertional limitations.

Adding to the confusion, the ALJ stated that a VE, Lynne Tracy, appeared at the hearing. A.R. 10. The record reflects a request from the ALJ for her appearance to testify in Carrasquillo's case, for the pertinent period of November 30, 1998, to the present. A.R. 58. Her resume is included in the record. A.R. 60-61. However, the hearing transcript does not reflect any appearance or testimony by her. A.R. 19-37. There is nothing in the record reflecting a VE's opinion as to jobs Carrasquillo could perform in the national economy.

To the extent Carrasquillo argues the ALJ erred for failing to take into account nonexertional limitations due to side effects from medication, his argument is rejected. Carrasquillo has not established a significant nonexertional limitation, or any limitation at all, with regard to side effects from medication. *See* Section III.F., above.

///
///
///

## IV.

## **CONCLUSION**

IT IS HEREBY ORDERED that the matter is remanded to the Commissioner for proceedings at Step Five. As discussed above, the ALJ is free to reconsider the September 13, 2007 treating records on remand.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: June 12, 2009

ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE